Argued and submitted July 10, affirmed as modified October 26, 1981

In the Matter of the Marriage of

MASSEY,
*Respondent,*
*and*
MASSEY,
*Appellant.*

(No. 80-5-185, CA A20034)

635 P2d 1

John C. Hutchison, Oregon City, argued the cause for appellant. With him on the brief was Biggs, Hutchison, Hammond & Walsh, Oregon City.

W. Bradford Jonasson, Jr., Oregon City, argued the cause for respondent. With him on the brief was Santos and Jonasson, Oregon City.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Wife appeals the property distribution portion of the dissolution decree. She contends that the trial court's refusal to award her one of two houses owned in the parties' names was an inequitable distribution of the marital assets.

The parties were first married on July 28, 1973. In May, 1975, a house was purchased in both parties' names, and the couple set up residence there.[1] That marriage was dissolved by a decree, effective November 29, 1975, which awarded husband the house. Two weeks later, on December 13, 1975, the parties married again.[2] They continued to live in the house awarded to husband and purchased the next-door house and lot, again in both their names, in January, 1979. A second mortgage on the first house supplied the down payment. Husband claims that wife did not participate in the purchase of the second house in any way. The parties separated in March, 1980, and the decree of dissolution here now was entered January 9, 1981. Wife continued to live in the first house, and husband moved into the second.

At the time of the hearing, husband was 40 years old and had been employed as a design engineer at a paper mill for approximately five and one-half years. In addition to his net pay of approximately $1,256 per month, he earns a yearly gross income ranging from $8,000 to $15,000 from a one-man drafting business. Wife was 33 years old at the time of the trial and has completed three years of business courses. She was employed as an assembler clerk for an insurance company at a net salary of about $500 per month. During the marriage, she was unemployed for a period of three months. There are no children of this marriage.

---

[1] Husband contends he acquired the house in anticipation of their divorce.

[2] In his proposed distribution of assets in the trial court, husband claimed

"[s]everal months after their first divorce, Wife and Wife's mother pressured the Husband into remarrying. The ceremony was completed after Husband's best man caught him attempting to escape through a bathroom window. To this date, his co-workers believe that he is single."

The trial court awarded husband both houses, two motorcycles, two automobiles, some household effects, a credit union share account and the assets of his drafting business. Wife was awarded an automobile, a motorcycle and household furnishings. In addition, the court awarded her an $18,000 judgment as her share of the equity in the first house and $150 per month support for one year or until the judgment was paid, whichever occurs first. Although the parties disagree about the value of the property,[3] under both parties' estimates, wife received the "short side" of the assets.

It is clear from the record that the trial court treated the marriage and the remarriage as two marriages.[4] Wife claims it should have treated the parties' relationship as one seven and one-half year "long-term" marriage. Had it done so, she claims, it then would have had to attempt to place the parties as nearly as possible in the financial position they would have had if no dissolution had taken place. See Pullen and Pullen, 38 Or App 137, 142, 589 P2d 1145, rev den 280 Or 449 (1979). Wife claims the court applied instead the "short-term" approach found in York and York, 30 Or App 937, 939, 569 P2d 32 (1977):

"* * * [T]he general approach in dividing property after a short-term marriage is to place the parties as nearly as possible in the financial position they would have held if no marriage had taken place."

■      The fundamental rule is that the property division shall "be just and proper in all the circumstances." ORS 107.105(1)(e); Flowers and Flowers, 34 Or App 211, 577 P2d 1369 (1978). While the length of a marriage is an important factor, it alone is never determinative of what is an equitable distribution of assets.[5] That there were only seven and one-half years of marriage, whether broken into temporally near pieces or not, does not by itself require that the

---

[3] Wife valued the assets awarded to husband at $62,750, while she claims to have received $24,000, including the judgment. Husband, on the other hand, claims he received $47,400 and wife a total of $25,700. Under wife's calculations, the equity in the first house is $26,500 and $26,000 in the second. Husband claims the equity is $19,500 in the first house and $24,000 in the second.

[4] Wife claims that this in itself was error. In light of the fact that the trial court awarded wife her share of the equity in the first house, we disagree.

[5] See, e.g., Watrous and Watrous, 23 Or App 241, 243, 541 P2d 1082 (1975).

parties be returned to the financial positions they would have enjoyed but for the marriage(s). *Cf. Gerlitz and Gerlitz,* 50 Or App 443, 623 P2d 1088, *rev den* 290 Or 853 (1981) (six year marriage justified awarding husband one-half of the equity in the house wife brought to the marriage). Moreover, in light of the substantial judgment awarded wife, it is not really clear which "approach" the court did use.

■ Although the parties did not contribute equally to the marital community,[6] we are not convinced that this was due to a conscious economic arrangement rather than to the parties' disparate earning capacities. Moreover, while the source of the marital assets is a relevant factor, it is not the only one. *Sellers and Sellers,* 39 Or App 647, 593 P2d 1191, 41 Or App 13, 593 P2d 1191 (1979).

■ Husband claims that the acquisition of property was due to his "herculean efforts * * * for *[sic]* procuring additional income" rather than his greater earning power. Nevertheless, the properties were purchased in both parties' names. Presumably both parties shared the risk of profit and loss. Most of the appreciation in the value of the houses occurred while the parties were married. As in *Flowers,* 34 Or App at 214,

> "[T]he fact that there was a brief hiatus in their marital relationship did not substantially change their position as to these properties."

The decree is modified to award wife the house purchased during the first marriage in lieu of the $18,000 judgment. That being so, the support provision of the decree is also modified to provide for spousal support in the amount of $150 per month for one year from the date of the decree.

Affirmed as modified. Costs to appellant.

---

[6] The parties maintained separate checking accounts. Husband made all of the loan, utility, insurance and tax payments, while wife purchased all of the groceries and paid for gifts and her personal bills.