Donald D. BOYLES, Appellant,

v.

STATE of Alaska, Appellee.

No. 5667.

Court of Appeals of Alaska.

July 16, 1982.

Walter Share and Phillip Paul Weidner, Drathman & Weidner, Anchorage, for appellant.

Eugene B. Cyrus, Asst. Dist. Atty., W. H. Hawley, and David Mannheimer, Asst. Attys. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Donald D. Boyles was charged with possessing illegally caught salmon in violation of commercial fishing regulations. On March 13, 1979, Boyles was acquitted of that charge following a jury trial.

After that acquittal, the state was advised that perjury had taken place at that trial. Following an investigation and a grand jury hearing, an indictment was issued charging Boyles with one count of subornation of perjury and seventeen counts of perjury. Boyles pled *nolo contendere* to one count of perjury (Count II of the indictment), and the state dismissed all of the other charges. Superior Court Judge J. Justin Ripley sentenced Boyles to a term of three years.[1]

In this appeal, Boyles challenges his conviction for perjury as violative of the double

---

1. Judge Ripley also provided for Boyles' release during the fishing season each year (May 1 to September 30).

jeopardy provisions of the United States Constitution and the Alaska Constitution.[2] He also challenges his sentence as excessive.

In order to understand the substance of Boyles' double jeopardy argument, it is necessary to begin by delineating the circumstances of the earlier fishing offense charged against Boyles.

In September of 1978, Boyles, a commercial fisherman operating out of Cordova, was charged with catching and possessing fish during a "closed" period. Applicable commercial fishing regulations prohibited fishing between 7:00 p. m. Thursday, September 7, and 7:00 a. m. Monday, September 11. Shortly before the reopening of the fishing period, Boyles was found in possession of a boat load of fish.[3] The state thus charged Boyles with a violation of the fishing regulations on the theory that he had caught the fish during the closed period. In defense, Boyles claimed that he had caught the fish prior to the closing of the fishing period on the previous Thursday, but that because of engine trouble and stormy seas, he was unable to get the fish to port or to a tender prior to Monday morning.

While nobody actually saw Boyles catch fish during the closed period, the state presented a case of circumstantial evidence which tended to establish that conclusion. Fish and Wildlife Protection Officers Scott Gibbens and John Lake testified that they observed Boyles' boat, tied together with Totemoff's boat, on the Copper Flats fishing grounds at 6:20 a. m. on Monday, September 11. Fish were found on both boats. The state presented the testimony of Officer Gibbens who claimed to have seen Boyles' boat in the Cordova harbor on the previous Saturday and Sunday, September 9 and 10. The state also presented the testimony of three fishermen who, along with a number of other fishermen and their boats, were moored on the Copper Flats fishing grounds on Sunday night. These three fishermen testified that they heard boat engines late Sunday evening and that they noticed that Boyles' boat had moved during the night. This evidence implied that Boyles had been fishing during the night.

Boyles testified in his own defense, asserting that the fish had been caught on Thursday, and that due to engine problems and high winds, he had to remain on the flats through the weekend. He stated that Totemoff had arrived on the flats on Sunday, and that Boyles had transferred some of his catch to Totemoff's boat in order to lighten his load so that he could travel to a tender without overheating his engine. Totemoff's testimony corroborated this story.

Following the presentation of the above evidence, the jury acquitted Boyles of the fishing violation charge. After this acquittal, Totemoff came forward and stated that perjured testimony had been given. He stated that both he and Boyles had fished during the closed period and that they both lied at trial. Totemoff said he lied because of his friendship with Boyles. Totemoff also stated that Boyles promised to give him some of his catch if Totemoff corroborated his story.

Following a grand jury hearing, an eighteen count indictment was returned against Boyles. The first count charged the subornation of perjury of Totemoff, and the last seventeen counts charged perjury. Count II charged that Boyles had falsely sworn at trial that he had been on the Copper Flats fishing grounds "all week." Boyles pled *nolo contendere* to this charge, and the state dropped the other charges. Boyles was sentenced to a three-year term of imprisonment. This appeal followed.

2. The Fifth Amendment to the United States Constitution states in part:
   ... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb....
   Alaska Const. art. 1, § 9 states:
   *Jeopardy and Self-Incrimination.* No person shall be put in jeopardy twice for the same offense. No person shall be compelled in any criminal proceeding to be a witness against himself.

3. Actually, Boyles' boat was tied up with Phillip Totemoff's boat, and fish were found aboard both vessels. Both Boyles and Totemoff testified at trial, however, that all of the fish belonged to Boyles.

It is Boyles' contention that his acquittal of the fishing violation charge raises a double jeopardy and collateral estoppel bar to a subsequent perjury charge based upon his testimony at the earlier trial. Boyles argues that, in acquitting him, the jury implicitly concluded that he was telling the truth. He contends that the state should not have a second opportunity to, in effect, relitigate the issue of his credibility which was resolved in his favor at the first trial. "It is well established that the charge of perjury is not barred by the simple fact of acquittal in the case in which the false testimony is given." *Wheatley v. United States*, 286 F.2d 519, 520 (10th Cir. 1961) (citation omitted). Equally clear, however, is the fact that there are situations in which a prosecution for perjury, predicated upon testimony given in a previous trial which resulted in an acquittal, may be barred. We conclude that the charge embodied in Count II of the indictment is not prohibited by principles of double jeopardy or collateral estoppel.

As a starting point of analysis, the doctrine of collateral estoppel does apply to criminal cases. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *United States v. Williams*, 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747 (1951); *Sealfon v. United States*, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948).[4] The doctrine of collateral estoppel, recently renamed "issue preclusion," is defined as follows:

> When an issue of fact or law is actually litigated and determined by a final and

valid judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 68 (Tent. Draft No. 1, 1973), *quoted in United States v. Hernandez*, 572 F.2d 218, 220 (9th Cir. 1978).

*Ashe v. Swenson* and its antecedents have spawned considerable progeny specifically addressing the issue of collateral estoppel as applied to perjury prosecutions. Foremost among these is a case from the Ninth Circuit Court of Appeals, *United States v. Hernandez*, 572 F.2d 218 (9th Cir. 1978). There, the court spelled out an appropriate framework of analysis:

> The collateral estoppel analysis involves a three-step process: (1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was 'litigated' in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*Id.* at 220. In essence, this is the scheme of analysis adopted by those courts that have addressed the issue.

In almost all of the cases that have considered a collateral estoppel defense to a perjury charge, the result has

---

**4.** In *Sealfon,* the court held that *res judicata* "applies to criminal as well as to civil proceedings and operates to conclude those matters in issue which the verdict determined though the offenses be different." *Sealfon v. United States,* 332 U.S. at 578, 68 S.Ct. at 239, 92 L.Ed. at 184 (citations omitted). And in *Ashe,* the court observed,

> 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an

established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer,* 242 U.S. 85 [37 S.Ct. 68, 61 L.Ed. 161]. As Mr. Justice Holmes put the matter in that case, 'It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt.' 242 U.S., at 87 [37 S.Ct., at 69]. As a rule of federal law, therefore, '[i]t is much too late to suggest that this principle is not fully applicable to a former judgment in a criminal case....'

*Ashe v. Swenson,* 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475 (footnote omitted; citation omitted).

turned upon whether or not the jury had to "necessarily" pass upon the truthfulness of the testimony in issue in order to reach a verdict. As stated in *United States v. Haines*, 485 F.2d 564, 565 (7th Cir. 1973), *cert. denied*, 417 U.S. 977, 94 S.Ct. 3184, 41 L.Ed.2d 1147 (1974):

> In the context of a perjury indictment relating to testimony given at a former trial on a substantive charge, the doctrine of collateral estoppel does not bar the perjury prosecution unless the issues of fact central to that prosecution were *necessarily* determined in the former trial. Unless the record of the prior proceeding affirmatively demonstrates that an issue involved in the second trial was definitely determined in the former trial, the possibility that it may have been does not prevent the relitigation of that issue. (citations omitted).

*Accord United States v. Giarratano*, 622 F.2d 153 (5th Cir. 1980); *United States v. Dipp*, 581 F.2d 1323 (9th Cir. 1978), *cert. denied*, 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979); *United States v. Fayer*, 573 F.2d 741 (2d Cir.), *cert. denied*, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978); *United States v. Gugliaro*, 501 F.2d 68 (2nd Cir. 1974); *United States v. Gremillion*, 464 F.2d 901 (5th Cir.); *cert. denied*, 409 U.S. 1085, 93 S.Ct. 683, 34 L.Ed.2d 672 (1972); *United States v. Nash*, 447 F.2d 1382 (4th Cir. 1971); *Adams v. United States*, 287 F.2d 701 (5th Cir. 1961); *United States v. Drevetzki*, 338 F.Supp. 403 (N.D.Ill.1972). The burden of proof is on the defendant to show that the issue was, in fact, necessarily decided at the prior trial. *United States v. Cala*, 521 F.2d 605 (2d Cir. 1975); *United States v. Gugliaro*, 501 F.2d at 70.

The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previ-

ous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States*, 332 U.S. 575, 579 [68 S.Ct. 237, 239, 92 L.Ed. 180]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

*Ashe v. Swenson*, 397 U.S. at 444, 90 S.Ct. at 1194, 25 L.Ed.2d at 475–76 (footnotes omitted).

At his trial on the fishing violation charge, Boyles was asked, "Had you in fact been out there [on the fishing grounds] all week?" and he answered, "Yes, I was." Count II of the indictment alleged that Boyles perjured himself in giving this answer.[5] In order to defeat that charge and the resulting conviction and sentence, Boyles must establish that, in reaching its verdict of acquittal, the jury necessarily passed upon the veracity of the statement in issue.

The issue at trial was whether Boyles caught the fish during the open period on Thursday, September 7, as he testified, or whether he caught the fish during the closed period (7:00 p. m. Thursday, September 7 to 7 a. m., Monday, September 11). Boyles argues that in acquitting him, the jury necessarily believed his statement that he was on the fishing grounds "all week," i.e., Monday, September 4 to Thursday, Sep-

**5.** From the briefs, it appears that Boyles was not on the Copper Flats fishing grounds all week. At the hearing where Boyles entered his no contest plea, Officer Gibbens testified that his investigation had established the fact that

Boyles and his boat were in Cordova on Monday, Tuesday, and Wednesday. Furthermore, at this hearing, defense counsel explicitly admitted that Boyles was in Cordova on those days.

tember 7. By contrast, the state argues that the jury need only have concluded that Boyles caught the fish on Thursday; a decision as to his presence on the fishing grounds on Monday, Tuesday, or Wednesday did not necessarily have to be made in order to reach a judgment of acquittal.

A review of Boyles' testimony at trial shows that Boyles testified that on Thursday, September 7, he caught the fish that were found on his boat. The trial testimony and argument centered upon whether Boyles had caught the fish that were found on his boat on Thursday, September 7, the last legal day to fish, or whether he caught them after that date. To establish why he still had the fish on Monday, September 11, at a time before he was again permitted to fish, Boyles necessarily had to convince the jury he had been on the fishing ground from Thursday, September 7, to Monday, September 11. Therefore, the only question directly in issue at the first trial was whether Boyles remained present on the grounds continuously from the close of fishing on September 7 until he was contacted by officers on September 11. The question of Boyles' presence on the grounds before September 7, the date upon which, according to his own testimony, he caught the fish that were aboard his vessel, was not given any actual significance by the parties and was not realistically litigated. In acquitting Boyles, the jury could possibly have believed that he had been present on the grounds continuously prior to Thursday, September 7. Yet the jury could also have found Boyles innocent, even if it concluded that he had not arrived on the fishing grounds until just before Thursday, September 7. Taking a realistic view of the evidence and the manner in which the issues were actually litigated during Boyles' trial, however, it would seem most likely that the jury never actually decided the precise questions of the date that Boyles arrived on the fishing grounds or the length of his presence on the grounds before September 7; it simply cannot be said that a decision on these questions would have been necessary to allow the jury to reach its verdict.

By acquitting Boyles, the jury necessarily determined that he was on the fishing grounds only during the period from Thursday, September 7, to Monday, September 11, and collateral estoppel would prevent a contrary finding as to this issue. However, except for Boyles' statement that he had been out on the fishing ground all week, the trial never focused on where Boyles was before Thursday, September 7. Where Boyles was from Monday, September 4, through Wednesday, September 6, was simply not litigated in the trial. We conclude that the jury did not necessarily decide that Boyles was on the fishing ground "all week" in acquitting him. It follows that a perjury prosecution for making this statement was not prohibited on double jeopardy grounds.

By contrast, in charging Boyles with the offense of perjury, the prosecution presented substantial evidence focusing upon Boyles' absence from the fishing grounds prior to Thursday, September 7. It is apparent that the prosecution's charge of perjury did not depend exclusively upon proof that Boyles had left the fishing grounds after Thursday, September 7, and before Monday, September 11—the issue that was actually litigated at Boyles' trial. Instead, the prosecution for perjury could independently have been based upon proof that Boyles did not arrive upon the fishing grounds until September 7, and that his testimony that he had been on the grounds "all week" had been inaccurate for this reason. Indeed, a review of the comments made by Boyles' attorney indicates that this was specifically the basis upon which Boyles entered his plea of *nolo contendere*. When Boyles entered his plea, his attorney stated that Boyles continued to assert the fact of his continued presence on the fishing grounds after September 7, but that the plea of *nolo contendere* was being entered because Boyles conceded that the state could prove his absence from the fishing grounds during that part of the week that preceded September 7. It follows that a perjury prosecution against Boyles for making the statement that he had been on the

fishing grounds "all week" was not prohibited by collateral estoppel and that his double jeopardy claim is without merit.[6]

## SENTENCE APPEAL

■ Boyles appeals his sentence of three years' imprisonment as excessive.[7] At the time he committed the offense Boyles was thirty-eight years old. He had a prior conviction for a commercial fishing violation in 1976 and several minor traffic convictions.

In passing sentence Judge Ripley indicated that he did not think that it was necessary to incarcerate Boyles in order to protect society. However, he did indicate that he considered perjury to be a particularly serious offense and said that he believed that a three-year sentence was necessary to deter Boyles and other members of society from committing perjury and to reaffirm societal norms.

■ Even though we consider Boyles' sentence to be severe for a person with his background who has committed perjury in a misdemeanor case, we do not consider Boyles' sentence to be clearly mistaken.

See *McClain v. State*, 519 P.2d 811 (Alaska 1974). There was sufficient evidence before Judge Ripley for him to consider the evidence that Boyles had committed subornation of perjury by persuading Phillip Totemoff to testify falsely at his trial. *Nukapigak v. State*, 562 P.2d 697 (Alaska 1977), aff'd on rehearing, 576 P.2d 982 (Alaska 1978). In light of that evidence, we believe Judge Ripley was justified in considering this to be a particularly aggravated perjury case. Both Boyles' willingness to enlist the aid of another person to further his crime and the fact that imposition of a substantial sentence for an offense such as the one in this case is likely to result in deterrence of other potential offenders justifies the relatively severe sentence imposed.

We have also reviewed Boyles' sentence under both the current and the former criminal code to determine if it appears to be consistent with those statutes. Under the former criminal code, under which Boyles was sentenced, he was subject to a sentence of "not less than three years nor more than 10 years."[8] It is clear the trial

---

6. We also have reviewed the record of the grand jury to assure ourselves that the prosecution did not indict Boyles based upon essentially the same evidence as that used in the prosecution for the original charge of possessing illegally caught salmon. Although much of the evidence was the same, there was sufficiently different testimony presented to the grand jury to convince us that the state was not just reprosecuting Boyles on issues decided in the first trial. First, Phillip Totemoff's testimony established that he and Boyles had illegally caught the fish and had then perjured themselves at trial. The state also established through the testimony of Steve Eleshansky and Paul Roberts that Boyles had engine trouble on the fishing grounds on Monday, September 4. Boyles flew in to Cordova on that day, leaving Eleshansky on the fishing boat. Roberts was the skipper of the Pay Day, a tender, which towed Boyles' boat to Cordova. The Pay Day reached Cordova on Tuesday, September 5, and Roberts testified he saw Boyles Tuesday evening in Cordova. *See United States v. Nash*, 447 F.2d at 1386–87 (Winter, J., concurring).

7. Judge Ripley sentenced Boyles to serve three years' imprisonment but ordered Boyles' release during the fishing season, from May 1 to September 30, of each year. Judge Ripley provided that Boyles would not receive credit "for purposes of parole or good time toward manda-

tory release" for the periods he was released during the fishing season. The written judgment is unclear about whether Boyles would receive credit toward his sentence during the period he was released during the fishing season. However, Judge Ripley's oral remarks at sentencing make it clear that Boyles was not to receive credit for any time served during any periods when he was released. Since the oral pronouncement of sentence ordinarily controls, we have concluded that Boyles was sentenced to serve three years and was not to receive any credit for time while he was released during the fishing season. *Burrell v. State*, 626 P.2d 1087, 1089 (Alaska App.1981). We have therefore reviewed Boyles' sentence as a sentence of three years' imprisonment.

8. Former AS 11.30.020 reads as follows:

*Punishment for perjury or subornation of perjury.* (a) A person convicted of perjury committed in a criminal action or proceeding for a crime punishable by imprisonment for life is punishable by imprisonment in the penitentiary for not less than two years nor more than 20 years.

(b) A person convicted of perjury committed in a proceeding in a court other than a criminal action referred to in (a) of this section is punishable by imprisonment in a peni-

court could have given less than the minimum sentence under the former code.[9]

Turning to the current code, which we look to as the most recent expression of legislative intent,[10] we find that perjury is a class B felony with a maximum sentence of ten years.[11] An offender being sentenced for a first felony conviction should not normally receive a sentence in excess of the presumptive sentence for a second offender. *Austin v. State*, 627 P.2d 657 (Alaska App. 1981). Since the presumptive sentence for a class B felony is four years,[12] Boyles' sentence of three years does not violate that guideline. Therefore, we do not find that Boyles' sentence is clearly mistaken when examined under the legislative guidelines set forth under the former and current criminal codes.

The conviction and sentence are AFFIRMED.

tentiary for not less than three years nor more than 10 years.

(c) A person convicted of perjury committed otherwise than in a proceeding before a court of justice, or a person convicted of the crime of subornation of perjury, however committed, is punishable by imprisonment in the penitentiary for not less than one year nor more than five years.

9. Former AS 11.05.150 reads as follows:

*Imposing less than prescribed penalty.* Except in a case of murder or rape, the court may, upon conviction, when in its opinion the facts and circumstances make the minimum penalty provided in this title manifestly too severe, impose a lesser penalty, either of a fine or imprisonment or both. When less than the minimum penalty is imposed, the court shall set out the reasons for its action on the record in the case.

10. *Whittlesey v. State*, 626 P.2d 1066, 1068 (Alaska 1980).

11. AS 11.56.200 reads in part as follows:

*Perjury.* (a) A person commits the crime of perjury if he makes a false sworn statement which he does not believe to be true.

. . . .

(c) Perjury is a class B felony.

12. AS 12.55.125(d)(1).