**Michael DeMAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 7381.**

Court of Appeals of Alaska.

Feb. 10, 1984.

---

William Grant Callow, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Timothy Petumenos, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Michael DeMan was convicted of seven counts of perjury, AS 11.56.200. Superior Court Judge Victor D. Carlson sentenced DeMan to serve concurrent four-year terms for the offenses. DeMan appeals, chal-

lenging his conviction on a number of grounds and contending that his sentence is excessive. We affirm.

## FACTS

DeMan's charges arose from a grand jury investigation of a bribery scheme that involved state senator George H. Hohman, DeMan, Sigurd Larsen, and Arthur Kelly. The scheme included, in part, an agreement by DeMan to pay Hohman $20,000 in return for Hohman's securing a legislative appropriation for the state to purchase two CL-215 airplanes. *See Hohman v. State*, 669 P.2d 1316 (Alaska App.1983).

In February of 1981, after being granted immunity from prosecution, DeMan testified before the Hohman grand jury. The grand jury ultimately indicted Hohman for bribery and separately charged DeMan with eleven counts of perjury. Larsen and Kelly, who had also testified before the grand jury, were similarly indicted for perjury. Following a jury trial on this indictment, DeMan was convicted on five counts; he was acquitted of two counts, and the jury was unable to return a unanimous verdict on the remaining counts.

Hohman's bribery trial was scheduled to begin after completion of DeMan's trial. Upon DeMan's conviction, the state unsuccessfully sought to compel DeMan's testimony at the Hohman trial without an additional grant of immunity. The state alternatively sought to compel DeMan's testimony by a limited grant of use immunity. Ultimately, however, the state was forced to grant DeMan full transactional immunity in order to obtain his testimony in the Hohman trial. *See State v. Serdahely*, 635 P.2d 1182 (Alaska 1981). Since DeMan's perjury convictions were not yet final, they were vacated when the state granted DeMan transactional immunity to testify at trial.

DeMan testified at Hohman's trial in December of 1981. In keeping with his earlier grand jury testimony, DeMan generally denied participation in or knowledge of the alleged bribery scheme. As a result of his testimony at the trial, DeMan was once again indicted; the new indictment charged him with committing seven counts of perjury during the Hohman trial. DeMan eventually waived his right to a jury trial on the new indictment and was convicted by Judge Carlson of all seven counts.

## DOUBLE JEOPARDY

DeMan first contends that his perjury convictions violate the double jeopardy clause of the United States and Alaska Constitutions. U.S. Const., amend. V; Alaska Const., art. 1, sec. 9. He argues that his current perjury convictions are for statements similar to those in his original perjury indictment. Since he was once placed in jeopardy by being tried on the original charges, DeMan reasons that a second trial based on similar testimony was impermissible. We do not believe that DeMan's double jeopardy claim is well founded.

▪ Separate instances of perjury were alleged in DeMan's first and second indictments. DeMan's initial indictment charged perjury for testimony given before the Hohman grand jury. His second indictment charged perjury for testimony given at Hohman's trial. Since different episodes of perjury were involved in the two indictments, double jeopardy did not directly preclude a trial on the second indictment following the post-trial dismissal of DeMan's original indictment.

▪ DeMan recognizes that his second indictment involved a different episode of perjury. He nevertheless argues the prosecution on the second indictment was barred by the doctrine of collateral estoppel, or "issue preclusion." The constitutional protection against double jeopardy encompasses the collateral estoppel doctrine, which precludes relitigation of issues that have been determined by a prior judgment in favor of the accused. *Boyles v. State*, 647 P.2d 1113, 1116 (Alaska App. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1437, 75 L.Ed.2d 795 (1983). In *Boyles*, we held that collateral estoppel acts as a bar to prosecution for perjury when the statement

alleged to be false has previously been determined by a jury to be true. *Id.* at 1116–17. Our decision indicated that in each case the application of collateral estoppel must be governed by the analysis enunciated in *United States v. Hernandez*, 572 F.2d 218, 220 (9th Cir.1978):

> The collateral estoppel analysis involves a three-step process: (1) an identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*Boyles*, 647 P.2d at 1116.

■ Assuming these standards apply to the present case, we conclude that DeMan's second indictment was not barred by collateral estoppel. Under *Boyles*, the doctrine of collateral estoppel will apply in a perjury prosecution only when a prior judgment on the merits has necessarily determined that the accused's allegedly false statement was true. Here, with the exception of Count IV, which we will separately address, none of the charges contained in DeMan's second indictment involved statements that were even arguably similar to the statements involved in the two counts of which he was acquitted in his initial indictment.

DeMan maintains, however, that the state's post-trial dismissal of his first indictment precluded him from pursuing his appellate remedy and establishing that the evidence at his first trial had been insufficient. He argues that, had he succeeded in making this argument on appeal from his first conviction, reprosecution for subsequent similar testimony in other proceedings would clearly have been barred by collateral estoppel under our decision in

*Boyles*. DeMan reasons that, because the state deprived him of the right to vindicate his position by appealing his first conviction, we should, for the purpose of applying collateral estoppel, consider all of the statements alleged to be false in his original indictment as if they had been found to be true. Thus, DeMan urges us to conclude that the state should have been barred by collateral estoppel from bringing any further perjury charges against him as long as the charges involved statements similar to or consistent with any statements that were alleged to be false in his first indictment.

■ DeMan's argument is a novel one and is unsupported by any authority. The argument would, if accepted, result in a wholly artificial application of the collateral estoppel doctrine. As we observed in *Boyles*, "the rule of collateral estoppel in criminal cases is ... to be applied ... with realism and rationality." *Boyles*, 647 P.2d at 1117. Accordingly, we reject DeMan's argument to extend application of the collateral estoppel doctrine in this case. Since only Count IV of the second indictment involved a statement that was arguably similar to a statement relied upon in one of the two original perjury charges of which DeMan was acquitted, it follows that collateral estoppel could arguably have precluded the prosecution of that count. As to the remaining six counts of the second indictment, DeMan's double jeopardy claim is without merit.

■ We next consider the applicability of collateral estoppel to Count IV of the second indictment. Count IX of DeMan's initial indictment[1] charged that, in appearing before the Hohman grand jury, DeMan falsely denied telling Kim Hutchinson, a prosecution witness, that he (DeMan) stood to gain $20,000 from passage of an appropriation for the purchase of CL–215 airplanes. DeMan was acquitted of this charge. Count IV of the second indictment charged that, in his testimony at Hohman's

---

1. Prior to trial, Count IX of DeMan's original indictment was consolidated with another count and renumbered Count VIII.

trial, DeMan falsely denied mentioning the figure $20,000 to Hutchinson during a discussion about money he would receive if the appropriations bill were passed.

In ruling on DeMan's collateral estoppel claim prior to trial, Superior Court Judge James Blair acknowledged the similarity between false statements alleged in Count IX of the initial indictment and Count IV of the second indictment. However, applying the *Boyles* analysis, Judge Blair found that DeMan's acquittal on Count IX did not necessarily reflect a judgment on the truthfulness of the statement that was alleged to be false by Count IV of the second indictment. Judge Blair reasoned that DeMan might never have told Hutchinson that he would actually make $20,000 if the legislature passed the appropriations bill for CL-215 airplanes but that DeMan might nevertheless have mentioned the sum of $20,000 in talking to Hutchinson about the fact that he stood to gain some money from passage of the appropriation. Thus, Judge Blair concluded that acquittal on Count IX of the original indictment would not necessarily be inconsistent with conviction on Count IV of the second indictment. We believe Judge Blair's interpretation to be a reasonable one. Hutchinson's testimony at both of DeMan's trials indicated that DeMan never told Hutchinson that he would in fact receive $20,000 from passage of the appropriations bill, but that DeMan mentioned the sum of $20,000 at some point during a conversation in which DeMan said he would profit from passage of the appropriations bill. We thus hold that Judge Blair correctly found that Count IV of the second indictment was not barred by DeMan's prior acquittal on Count IX of the original indictment.

We conclude that the doctrine of collateral estoppel was inapplicable to any of the seven counts contained in DeMan's second indictment and that DeMan's double jeopardy claim must be rejected.

## SELF-INCRIMINATION

■ DeMan also argues that the second perjury indictment violated his constitutional right to be protected against self-incrimination. U.S. Const., amend. V; Alaska Const., art. 1, sec. 9. Specifically, DeMan contends that his second indictment was based on testimony that he had been compelled to give. This argument has no merit. It is well established that a prosecutorial grant of immunity will not protect a witness from a prosecution for perjury if the witness testifies falsely. *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). A witness who has been given immunity may be compelled to testify but is not compelled to testify falsely.

■ DeMan suggests that he was placed in an untenable position because he could have been prosecuted for the offense of perjury by inconsistent statements, as set out in AS 11.56.230, if he had materially changed his testimony when called as a witness at the Hohman trial. However, DeMan was not prosecuted for perjury by inconsistent statements, nor does he allege that such prosecution was ever threatened. On appeal, the state has acknowledged that a witness who has been given immunity cannot later be prosecuted for the offense of perjury by inconsistent statements. *See In Re Grand Jury Proceedings*, 644 F.2d 348, 350 (5th Cir.1981); *United States v. Berardelli*, 565 F.2d 24, 28 (2d Cir.1977). Moreover, after being given transactional immunity, DeMan testified at the Hohman trial, and, despite being represented by competent counsel, raised no objections. If DeMan believed, as he now contends, that the grant of transactional immunity was insufficient to protect him from self-incrimination, it was incumbent upon him to assert the privilege prior to testifying. Given DeMan's failure to assert the privilege, we hold that he has failed to preserve his self-incrimination claim.[2]

2. DeMan further contends that the evidence at trial was insufficient to support his conviction. He bases this claim entirely on his double jeopardy and self-incrimination arguments. Our holding on those issues is therefore dispositive of DeMan's claim of insufficient evidence.

## COMPELLED IMMUNITY FOR DEFENSE WITNESSES

· ▇ · DeMan next asserts that the trial court erred in refusing to order that immunity be granted to George Hohman and Arthur Kelly so that they would be available to testify in his defense at trial.

There are conflicting views as to whether a trial court has the inherent authority to compel the prosecution to grant immunity to a defense witness. *Compare Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir. 1980), *with In Re Daley,* 549 F.2d 469, 479 (7th Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977). We need not decide the issue in this case. Even in those jurisdictions most willing to permit judicially compelled immunity for defense witnesses, such immunity is considered appropriate only when necessary to remedy prosecutorial misconduct or when the prosecution does not present any justification for withholding immunity. *Smith,* 615 F.2d at 973–74; *United States v. Morrison,* 535 F.2d 223, 229 (3d Cir.1976). Courts uniformly recognize that where, as in this case, the prosecution demonstrates a legitimate and substantial interest in prosecuting the witness whose testimony the defendant seeks to compel, and where the potential charges against the witness arise from the same transaction as the charges against the defendant, immunity cannot properly be ordered. *See, e.g., United States v. Lowell,* 649 F.2d 950, 964–65 (3d Cir.1981); *United States v. Turkish,* 623 F.2d 769, 778 (2d Cir.1980), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); *United States v. Herman,* 589 F.2d 1191, 1199–1204 (3d Cir.1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979); *State v. Axley,* 132 Ariz. 383, 646 P.2d 268, 273–74 (1982) (en banc); *State v. Mesa,* 395 So.2d 242, 243 n. 2 (Fla.App. 1981); *Dampier v. State,* 249 Ga. 299, 290

S.E.2d 431, 432–33 (1982); *Bubb v. State,* 434 N.E.2d 120, 124 (Ind.App.1982); *State v. Dachtler,* 318 N.W.2d 769, 773 (N.D. 1982); *State v. Sanchez,* 98 N.M. 428, 649 P.2d 496, 502–03 (App.1982). The reasoning underlying these decisions was cogently expressed in *People v. Guyton,* 44 Colo. App. 548, 620 P.2d 50, 51 (1980):

> We need not reach the issue whether the court has such inherent powers [to compel immunity for a defense witness]. Even if it does, the exercise of such powers is improper when, as here, the witness for whom immunity is sought is a potential target of prosecution for the offense with which the defendant is charged. To hold otherwise would be an invitation to cooperative perjury, rendering a just prosecution of the guilty party impossible. [Citations omitted.]

▇ In ruling on DeMan's request to compel immunity for Hohman and Kelly, Judge Carlson expressly found that the state was proceeding in good faith with the prosecution of both individuals. We believe this conclusion is amply supported by the record. Indeed, this case exemplifies the need for caution in dealing with requests for compelled immunity of a defense witness who may also be a co-conspirator: all four defendants originally indicted in connection with the Hohman bribery scheme either filed or joined in motions requesting immunity for each other. We hold that denial of DeMan's motion to compel immunity was not error.[3]

## CHARGES BASED ON LEGAL CONCLUSIONS

DeMan's last challenge to the validity of his conviction rests upon the first two counts of his indictment. In Count I, DeMan was charged with perjury for denying

---

**3.** Prior to his second trial, DeMan alternatively requested a continuance of his trial until Hohman and Kelly had completed trial and could be compelled to testify in his behalf without being offered immunity. We believe that a continuance, like compelled immunity, is an unworkable option where multiple defendants are charged with offenses stemming from a common scheme. The prospect of reciprocal requests by co-defendants precludes the use of continuances as a realistic alternative to compelled immunity in such cases. Accordingly, we hold that Judge Carlson did not err in denying DeMan's alternative motion for a continuance of trial.

that he was involved in a bribery scheme. In Count II, he was charged with perjury for denying any knowledge of Hohman's involvement in the bribery. DeMan moved to dismiss both counts, contending that it was impermissible to base a charge of perjury on a statement made in response to a question calling for a legal opinion or conclusion. DeMan asserted that "bribery" is a legal term and that, accordingly, questions concerning bribery required him to give answers in the form of legal conclusions and not factual statements. Judge Carlson denied DeMan's motion and permitted Counts I and II to stand. DeMan renews his claim on appeal.

DeMan's argument relies on cases dealing with statutes that codify the common law concept of perjury. *See, e.g., People v. Longuemire*, 87 Mich.App. 395, 275 N.W.2d 12, 13 & n. 1 (1978). Under common law, perjury required proof of a false statement of fact; the offense did not extend to statements of opinion or to conclusions concerning hypothetical matters. Indeed, under common law, opinion evidence by lay witnesses was generally deemed impermissible. Under modern practice, however, a broad range of opinion evidence is admissible at trial. *See* Alaska Rules of Evidence 701 and 702.[4] Concomitantly, the definition of perjury has been expanded to include false opinions as well as purely factual misrepresentations. AS 11.56.200 proscribes false sworn statements. "Statement" is broadly defined in AS 11.56.240(1), which provides:

(1) "Statement" means a representation of fact and includes a representation of opinion, belief, or other state of mind when the representation clearly relates to state of mind apart from or in addition to any facts which are the subject of the representation.

Moreover, even under the traditional definition of perjury, false answers to questions concerning legal terms such as "bribery" could support a perjury prosecution if the record demonstrated that the meaning of the term was generally known, the term was used in a non-technical sense, and the accused, when testifying, clearly understood the manner in which the term was used. *See, e.g., United States v. Long*, 534 F.2d 1097, 1100–01 (3d Cir.1976).

It is apparent from the record in this case that the prosecution's questions to DeMan concerning knowledge of and participation in a bribery scheme did not require knowledge of the technical definition of bribery. It is further apparent that DeMan was well aware of the common meaning of the word and that his answers to the prosecution's questions were uninfluenced by any misunderstanding of its definition. Significantly, DeMan did not testify that he engaged in any equivocal speech or conduct that might have been mistaken for bribery. Rather, he categorically denied any contact or communication with any other person concerning CL–215 airplanes or the appropriations bill to enable the purchase of such airplanes. We hold that the references to bribery in Counts I and II of DeMan's indictment qualify as statements within the definition of Alaska's perjury statutes, AS 11.56.200 and AS 11.-56.240(1).

## SENTENCE

DeMan's final contention is that his concurrent four-year sentences are excessive. Prior to his involvement with the Hohman bribery scheme, DeMan had never been convicted of a felony. His criminal record consisted of a shoplifting conviction for an

---

**4.** A.R.E. 701 provides, in relevant part:
*Opinion Testimony by Lay Witnesses.*
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

A.R.E. 702 provides:
*Testimony by Experts.*
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

offense committed when he was a eighteen years old and several other minor offenses. At the time of sentencing, DeMan was thirty-nine years old. He had a college education and an excellent history of employment. As a result of his perjury indictments, DeMan was forced to resign a position as manager of the Tlingit-Haida Central Council's Division of Social and Economic Development. Evidently, DeMan's criminal charges also contributed to the breakup of his marriage. In addition, the two successive trials DeMan had faced imposed a severe financial burden on him. According to his presentence report, DeMan was "a broken man economically, as well as professionally." The presentence report concluded that DeMan was an excellent candidate for rehabilitation:

> This officer believes that rehabilitation is an important goal for the court to consider when fashioning a sentence in this case. Mr. DeMan appears to be a man of unusual talents and energy. It is apparent that Mr. DeMan not only has the ability to rehabilitate himself but in doing so has much to offer the state of Alaska and the citizens as well.

Furthermore, the presentence report indicated that deterrence of future misconduct by DeMan should not be a significant factor in sentencing, since future criminal misconduct was unlikely.

DeMan argues that these considerations militate against imposition of a substantial sentence of imprisonment. He maintains that sentencing priority should have been given to his rehabilitation and that his four-year sentences are incompatible with rehabilitation.

■ In imposing sentence, however, Judge Carlson took into account the various factors relied upon by DeMan in this appeal. Significantly, Judge Carlson disagreed with the presentence report's conclusions that DeMan was a good candidate for rehabilitation and that incarceration to deter future misconduct was unnecessary. In reaching his conclusion, Judge Carlson found that DeMan had consistently refused to accept responsibility for his misconduct

and that he had deliberately misrepresented his role in the Hohman bribery. These are factors upon which Judge Carlson could properly rely in determining the priority to be given to DeMan's rehabilitation. *Fox v. State,* 569 P.2d 1335, 1338 (Alaska 1977).

■ Furthermore, Judge Carlson's conclusion that DeMan was not a promising candidate for rehabilitation was supported by other evidence available to the court at the time of sentencing. First, during his employment with the Alaska Native Foundation, DeMan had misapplied business travel funds which he subsequently used for personal trips. DeMan apparently made no effort to reimburse the Alaska Native Foundation after his misuse of funds was disclosed, and he refused to accept responsibility for this misconduct, informing his presentence probation officer that the council's poor bookkeeping practices were to blame. Second, a routine urinalysis performed as a condition of release shortly before sentencing revealed that DeMan had used cocaine.

Although the evidence concerning DeMan's misuse of funds and his use of cocaine is not, by itself, particularly egregious, it does indicate that DeMan lacked appreciation for the seriousness of his misconduct and that his attitude toward the requirements of law and the judicial process was somewhat cavalier. Considering the entire sentencing record, we cannot conclude that Judge Carlson was clearly mistaken in deciding that rehabilitation should not be given overriding emphasis as a sentencing goal in DeMan's case. We further believe that Judge Carlson could properly have found that a sentence of imprisonment was necessary to deter future misconduct and that a substantial sentence was not necessarily inconsistent with DeMan's rehabilitation.

DeMan further argues that imposition of four-year sentences for his offenses violates the general rule that, in the absence of exceptional circumstances, first felony offenders should receive sentences that are less severe than the presumptive sentence

for a second felony offense of the same class. *Austin v. State*, 627 P.2d 657, 657–58 (Alaska App.1981). DeMan's perjury convictions are class B felonies, which are subject to a maximum term of ten years and to presumptive terms of four and six years for second and third felony offenders. Although the four-year term DeMan received equals the presumptive sentence for a second felony offender,[5] we believe that DeMan's conduct was among the worst within the definition of perjury and that an exceptional sentence was therefore justified in his case despite his favorable background.

In fashioning a sentence, Judge Carlson was entitled to consider the nature of De-Man's role as a participant in the Hohman bribery as well as the extent of his subsequent efforts to thwart successful prosecution of Hohman by repeated acts of perjury. DeMan's participation in the bribery scheme and his subsequent perjury demonstrated his ongoing willingness to subvert the state's legislative process at its highest levels.

It is, moreover, particularly significant that DeMan's perjury convictions arose from testimony given pursuant to a grant of immunity. While all perjury, by its nature, tends to obstruct justice, the potential for harm to the criminal justice system is especially great when an immunized witness commits perjury. Without a realistic threat of vigorous prosecution for perjury and effective sentencing, an immunized witness could treat the opportunity to testify freely as an open invitation to testify falsely, whether it be for the purpose of acquitting the guilty or convicting the innocent. Thus, we believe that the goals of deterring others and reaffirming societal norms must be given a prominent role in sentencing offenders convicted of testifying falsely after being given immunity.

In the present case, Judge Carlson appropriately' elected to emphasize these sentencing goals. When the extent of De-Man's involvement in the Hohman bribery and his status as an immunized witness are considered, we believe that the appropriateness of a substantial term of imprisonment is manifest, even when considerable weight is given to DeMan's favorable background. Certainly, when compared with sentences approved in less serious cases of perjury, DeMan's four-year concurrent sentences do not appear to be disproportionately high. *See Huff v. State*, 598 P.2d 928, 936 (Alaska 1979) (three-year sentence for perjury in a civil case involving a relatively small amount of money is appropriate); *Boyles v. State*, 647 P.2d 1113, 1119 (Alaska App. 1982) (three-year sentence affirmed for subornation of perjured testimony by defendant in a misdemeanor trial). We hold that DeMan's sentences are not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence are AFFIRMED.

---

**5.** We recognize that DeMan's four-year sentences are not the precise equivalent of presumptive four-year terms. Had DeMan been subjected to presumptive sentencing, he would have been ineligible for parole. AS 12.55.-125(g)(3).