STATE of Alaska, Petitioner,

v.

Bryan K. CORBETT, nominal Respondent,

and

Dupri CORBETT, Real Party in Interest.

No. A–11352.

Court of Appeals of Alaska.

Oct. 1, 2012.

---

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Petitioner.

John N. Page III, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the nominal Respondent. Daniel S. Bair, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for the Real Party in Interest.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

This case involves a witness who has been summoned to testify at a criminal trial, and who has been granted immunity pursuant to AS 12.50.101. Despite this grant of immunity, the witness continues to assert that he can lawfully refuse to testify because of the privilege against self-incrimination guaranteed by Article I, Section 9 of the Alaska Constitution, and the analogous privilege guaranteed by the Fifth Amendment to the United States Constitution.

The witness, Dupri Corbett, is the young son of the defendant, Bryan K. Corbett. The State has charged Bryan Corbett with second-degree assault, alleging that Corbett strangled his son as a method of discipline.

According to the State's allegations, this incident came to light when Dupri went to school and a counselor observed an injury to the boy's neck. When the counselor questioned Dupri about this injury, Dupri said that his father had strangled him to the point that his breathing was cut off.

But when Dupri was summoned to testify before the grand jury, Dupri recanted his earlier accusation and testified that his father had *not* assaulted him. Despite Dupri's testimony, the grand jury indicted Bryan Corbett for assaulting his son.

Dupri has now been summoned to testify at his father's trial, and the State has granted him immunity under AS 12.50.101. Despite this grant of immunity, Dupri argues that he still faces a real danger of self-incrimination if he takes the stand at his father's trial.

The superior court adopted Dupri's view of this matter—ruling that, because of this dan-

ger of self-incrimination, Dupri can refuse to take the stand at his father's trial. The State now petitions us to review and reverse the superior court's decision.

### The legal issues presented in this case

Two questions are presented in this petition for review, both dealing with the scope of Alaska's privilege against self-incrimination and the scope of the immunity conferred on witnesses under Alaska's witness immunity statute, AS 12.50.101.

Under AS 12.50.101(a) and (b), when a witness invokes the privilege against self-incrimination (and the court concludes that the privilege has been properly invoked), the government can grant the witness immunity, and then the court must order the witness to testify. The final sentence of AS 12.50.101(a) describes the scope of the witness's immunity for this compelled testimony:

> If the witness fully complies with the order [requiring the witness to testify], the witness may not be prosecuted for an offense about which the witness is compelled to testify, except in a prosecution based on perjury, giving a false statement or otherwise knowingly providing false information, or hindering prosecution.

Both of the legal controversies in this case center on the meaning of the final clause of AS 12.50.101(a): "except in a prosecution based on perjury, giving a false statement or otherwise knowingly providing false information, or hindering prosecution".

(A person commits the offense of "perjury" if the person makes a false statement under oath, and if the person does not believe this statement to be true. See AS 11.56.200(a). A person commits the offense of "hindering prosecution" if the person "prevents or obstructs, by means of ... deception, anyone from performing an act which might aid in the discovery or apprehension" of another person who has committed a crime. See AS 11.56.770(b)(4).)

The first controversy in this case involves an immunized witness's potential criminal liability for testimony that the witness gives under the grant of immunity.

Because the immunity statute expressly allows the State to prosecute an immunized witness for perjury, the question arises whether the witness can continue to refuse to testify, even after receiving immunity under AS 12.50.101, if the witness has reason to believe that the prosecutor will view their impending testimony as knowingly false— thus giving rise to the possibility that the State might charge the witness with perjury based on this yet-to-be-given testimony.

The second controversy in this case involves the immunized witness's potential criminal liability for past acts of perjury or hindering prosecution.

As we have explained, the final clause of AS 12.50.101(a) authorizes the State to prosecute an immunized witness for "perjury" or for "hindering prosecution" despite the grant of immunity. Is this authorization limited to prosecutions for acts of perjury or hindering prosecution that the witness commits by giving false testimony *under the grant of immunity?* Or does this clause of the statute authorize the State to use the witness's immunized testimony (regardless of whether that immunized testimony is true or false) as supporting evidence in a prosecution brought against the witness for a *past* act of perjury or a *past* act of hindering prosecution—a crime that the witness committed *before* they gave their immunized testimony?

For the reasons explained in this opinion, we hold that a witness who has been granted immunity has no privilege to refuse to testify based on the possibility that the State might prosecute them for acts of perjury committed during their immunized testimony. We further hold that the final clause of AS 12.50.101(a)—the clause authorizing the State to use an immunized witness's testimony in a prosecution for perjury or for hindering prosecution—is limited to prosecutions for acts of perjury or hindering prosecution that the witness commits by giving false testimony under the grant of immunity.

### A more detailed description of the underlying facts

As we have already explained, Bryan Corbett has been indicted for assaulting his son, Dupri, and Dupri has been summoned to

testify at Bryan Corbett's trial. Although Dupri told school officials that his father assaulted him, he recanted this accusation when he testified at the grand jury—denying (under oath) that his father had assaulted him.

If, at his father's trial, Dupri were to testify that his father *had* assaulted him, this would subject Dupri to criminal liability for perjury (or, technically, delinquency liability for perjury) under one of two theories: either the theory that his grand jury testimony was knowingly false, or a theory of "perjury by inconsistent statements"—*i.e.*, the theory that Dupri's grand jury testimony and his trial testimony were irreconcilable, and that one of them had to be knowingly false. *See* AS 11.56.230(a).

Apparently because of this possibility that Dupri might incriminate himself, the State granted him immunity under AS 12.50.101. However, in the superior court, the attorney appointed to represent Dupri argued that, despite this grant of immunity, Dupri could still validly claim the privilege against self-incrimination and refuse to testify.

Dupri's attorney asserted—and Dupri himself confirmed—that Dupri intended to repeat the exculpatory testimony he offered to the grand jury. Dupri's attorney pointed out that the prosecutor obviously thought that Dupri's exculpatory grand jury testimony was false. The attorney then argued that if Dupri took the stand at his father's trial and repeated that exculpatory testimony, Dupri would run a significant risk that the State would prosecute him for perjury—not based on the earlier grand jury testimony, but rather based on his new testimony at his father's trial.

Superior Court Judge *pro tempore* John R. Lohff ultimately agreed with this argument. The judge concluded that, because Dupri intended to offer the same exculpatory testimony he had earlier given to the grand jury, and because the State clearly thought that this version of events was false, Dupri faced a significant danger of self-incrimination if he testified at his father's trial—because the State might prosecute him for perjury based on this yet-to-be-given testimony.

In other words, Judge Lohff concluded that even though Dupri had been granted immunity, Dupri still retained a privilege against self-incrimination because the State retained the ability to prosecute Dupri for knowingly giving false testimony under the grant of immunity.

The State has now petitioned us to review and reverse this ruling. The witness, Dupri Corbett, and the defendant, Bryan Corbett, have filed a joint response to the State's petition.

(Because the Corbetts have filed a joint response, we do not need to resolve the question of whether Bryan Corbett has standing to participate in this litigation, given that the litigation is concerned solely with the scope of Dupri Corbett's privilege against self-incrimination.)

In the Corbetts' response to the State's petition, they argue that the superior court's legal analysis is correct. That is, they argue that Dupri can validly assert his privilege against self-incrimination because there is a possibility that the State will prosecute him for any perjury he may commit while testifying under the grant of immunity.

However, the Corbetts also advance an alternative justification for upholding the superior court's ruling. This alternative argument is based on the final clause of AS 12.50.101(a), which authorizes the State to prosecute an immunized witness for "perjury, giving a false statement or otherwise knowingly providing false information, or hindering prosecution".

The Corbetts point out that the statute does not expressly limit these prosecutions to acts of perjury, false statement, or hindering prosecution that are committed by the immunized witness *after* receiving immunity. Because of this lack of specificity, the Corbetts argue that the statute actually authorizes the State to use the witness's immunized testimony as evidence to support a prosecution for *any* act of perjury or hindering prosecution—including prosecutions for conduct that the witness engaged in *before* the witness was granted immunity. And, having construed the immunity statute in this fashion, the Corbetts argue that the statute is uncon-

stitutional—because it does not give immunized witnesses the same scope of protection as the privilege against self-incrimination.

*Question One: Does an immunized witness retain the ability to assert the privilege against self-incrimination, and the concomitant right to refuse to testify, based on the possibility that the State will disbelieve the testimony that the witness gives under the grant of immunity, and will prosecute the witness for committing perjury during that immunized testimony?*

The answer to this question is "no".

■ Both Article I, Section 9 of the Alaska Constitution and the Fifth Amendment to the United States Constitution bar the government from compelling people to give testimony that would incriminate them. A grant of immunity must provide a complete substitute for this privilege against self-incrimination.[1] Thus, an immunized witness must be assured that, with respect to their potential criminal liability, they will stand in exactly the same position—after having testified under the grant of immunity—as if they had not been compelled to testify.[2]

■ But a grant of immunity provides no protection for perjury that the witness has yet to commit.[3] As this Court noted in *DeMan v. State*, 677 P.2d 903, 908 (Alaska App.1984), and again in *State v. Hofseth*, 822 P.2d 1376, 1381–82 (Alaska App.1991), immunized witnesses can properly be prosecuted for perjury they commit during their immunized testimony.[4] The United States Supreme Court explained this principle in *United States v. Apfelbaum*:

[T]he Fifth Amendment does not prevent the [government's] use of [the witness's] immunized testimony [in a prosecution] for

false swearing because, at the time [the witness] was granted immunity, the privilege [against self-incrimination] would not have protected him against false testimony that he later might decide to give.

*Id.*, 445 U.S. 115, 130, 100 S.Ct. 948, 957, 63 L.Ed.2d 250 (1980).

In the present case, the superior court upheld Dupri Corbett's assertion of the privilege against self-incrimination under the rationale that (1) Dupri intended to testify (under the grant of immunity) that his father had *not* assaulted him; (2) the prosecutor already believed that any such testimony would be knowingly false; and thus (3) there was a significant possibility that Dupri might be prosecuted for perjury based on the statements he made while giving his immunized testimony.

This ruling was incorrect as a matter of law. Even assuming that each of the superior court's three premises is true, neither the Alaska Constitution's protection against self-incrimination nor the analogous protection afforded by the Fifth Amendment would bar the State from prosecuting Dupri for future perjury he might commit while testifying under the grant of immunity.

*Question Two: Does Alaska's immunity statute allow the State to use a witness's immunized testimony as evidence to support a prosecution for an earlier act of perjury or hindering prosecution—in other words, a prosecution for conduct that the witness engaged in before receiving immunity?*

■ Again, the answer is "no". To explain this answer, we must describe the difference between "use and derivative use" immunity and "transactional" immunity.

About half of the states, as well as the federal government, adhere to the doctrine

---

1. *State v. Gonzalez*, 853 P.2d 526, 530 (Alaska 1993).

2. *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972) ("a grant of immunity must afford protection commensurate with [the protection] afforded by the privilege [against self-incrimination]"); *Hazelwood v. State*, 836 P.2d 943, 946 (Alaska App. 1992); *State v. Gonzalez*, 825 P.2d 920, 923 (Alaska App.1992).

3. *United States v. Apfelbaum*, 445 U.S. 115, 128, 100 S.Ct. 948, 955, 63 L.Ed.2d 250 (1980); *State v. Gonzalez*, 853 P.2d 526, 530 & n. 4 (Alaska 1993).

4. Wayne R. LaFave, Jerold H. Israel, Nancy J. King, and Orin S. Kerr, *Criminal Procedure* (3rd ed. 2007), § 8.11(a), Vol. 3, p. 271; *United States v. Apfelbaum*, 445 U.S. 115, 126–27, 100 S.Ct. 948, 955, 63 L.Ed.2d 250 (1980).

that a witness's privilege against self-incrimination is fully protected if the government guarantees that the witness's immunized testimony will never be used against the witness in a criminal prosecution—including a protection against "derivative" or indirect use of the immunized testimony (*i.e.*, use of the investigative fruits of the immunized testimony).[5] In these jurisdictions, it is lawful for witnesses to be prosecuted later for crimes that they discuss in their immunized testimony, so long as the government's evidence in support of that prosecution is completely independent of the witness's immunized testimony.

Alaska's immunity statute, AS 12.50.101, initially codified this rule of "use and derivative use" immunity. As originally enacted in 1982,[6] the final sentence of AS 12.50.101(a) provided:

> If the witness fully complies with the order [requiring the witness to testify], *no testimony or other information compelled under the order, or [any] information directly or indirectly derived from that [compelled] testimony or ... information, may be used against the witness in a criminal case,* except in a prosecution based on perjury, giving a false statement or otherwise knowingly providing false information, or hindering prosecution.

(We have put the differing language in italics.)

Attentive readers will note that this original version of the statute suffers from the same ambiguity as the current version. The statute authorizes the State to use the immunized witness's testimony in a prosecution for perjury, false statement, or hindering prosecution, but the statute does not expressly limit these prosecutions to acts of perjury, false statement, or hindering prosecution that are committed by the immunized witness while testifying under the grant of immunity. Thus, at least potentially, the statute authorizes the State to use the witness's immunized testimony as evidence to support a prosecution for *any prior* act of perjury or hindering prosecution—conduct that the witness engaged in *before* the witness testified under the grant of immunity.

However, the legislative commentary to the statute points to the proper resolution of this ambiguity. In this commentary, the legislature declared that if the government later pursues a criminal prosecution against the witness, the government would be required to show "that its evidence [was] wholly independent of the compelled testimony"—a requirement designed to place the witness "in the same position as though he had never testified".[7]

This commentary strongly suggests that, even under the original "use immunity" version of the statute, if the State were to prosecute the immunized witness for an *earlier* act of perjury, false statement, or hindering prosecution, the State would be required to show that its evidence was not derived in any fashion from the witness's immunized testimony.

This conclusion is bolstered by the interpretation that the federal courts have given to the corresponding federal immunity statute, 18 U.S.C. § 6002.

The legislative commentary to our immunity statute explains that our statute was modeled after 18 U.S.C. § 6002.[8] This federal immunity statute contains a perjury / false statement exception that is similar to the exception found in Alaska's statute—including the same ambiguity concerning past acts of perjury. The federal statute declares that, when a witness testifies under a grant of immunity,

> no testimony or other information compelled under the [grant of immunity] ... or any information directly or indirectly derived from such testimony or other information ... may be used against the witness in any criminal case, except a pros-

---

**5.** Wayne R. LaFave, Jerold H. Israel, Nancy J. King, and Orin S. Kerr, *Criminal Procedure* (3rd ed.2007), § 8.11(b), Vol. 3, p. 274; *Kastigar v. United States*, 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212 (1972).

**6.** SLA 1982, ch. 143, § 23.

**7.** 1982 House Journal, Supp. No. 64 (June 2nd), p. 17.

**8.** 1982 House Journal, Supp. No. 64 (June 2nd), p. 16.

ecution for perjury, giving a false statement, or otherwise failing to comply with the order.

Despite the ambiguity of the final clause of the federal statute, the statute has been interpreted to prohibit the use of a witness's immunized testimony in prosecutions for past acts of perjury, and to only allow a witness's immunized testimony to be used in prosecutions for acts of perjury that the witness might commit while testifying under the grant of immunity.[9]

■ Finally, we note that when the wording of a statute is ambiguous, giving rise to two possible interpretations, and when one of these interpretations would make the statute unconstitutional, an appellate court should reject the problematic interpretation of the statute and should interpret the statute in a manner that preserves its constitutionality (assuming that such an interpretation is reasonable).[10]

For these reasons, we conclude that the clause of AS 12.50.101(a) which authorizes the use of a witness's immunized testimony in prosecutions for perjury or hindering prosecution applies only to *future* acts of perjury or hindering prosecution—crimes that the witness might commit while testifying under the grant of immunity.

In addition, we note that the legislative commentary to AS 12.50.101 also addresses, albeit indirectly, the related issue of whether a witness's immunized testimony can form half of the basis for a charge of "perjury by inconsistent statements" if the immunized testimony is irreconcilable with the witness's testimony on a former occasion.

(This issue was discussed in *DeMan v. State*, 677 P.2d 903, 908 (Alaska App.1984). There, we indicated that this use of immunized testimony was prohibited, but our discussion in *DeMan* was *dictum*.)

Conceivably, one might argue that, in cases where a witness's immunized testimony is irreconcilable with the witness's previous testimony on the same subject, the crime of perjury by inconsistent statements was not complete until the witness gave the irreconcilable immunized testimony—and, thus, the offense of perjury by inconsistent statements should be considered a "new" crime that was not committed until the witness testified under the grant of immunity.

But as we have already noted, the legislative commentary to AS 12.50.101 declares that our statute (in its original form) was modeled after the federal immunity statute, 18 U.S.C. § 6002.[11] And when our statute was enacted in 1982, the corresponding federal statute had already been construed to prohibit this use of immunized testimony.[12] We therefore conclude that our immunity statute likewise prohibits the government from prosecuting an immunized witness for perjury by inconsistent statements based on irreconcilable differences between the testimony that the witness gives under a grant of immunity and testimony that the witness gave before receiving immunity.

We acknowledge that our analysis of these questions relies heavily on the legislative commentary to AS 12.50.101, and we further acknowledge that this commentary was written to accompany and explain the *original* version of the statute, the version that codified a rule of use and derivative use immunity. The statute has since been amended to codify a rule of transactional immunity.[13] The final sentence of AS 12.50.101(a) now reads:

If the witness fully complies with the order [requiring the witness to testify], the witness may not be prosecuted for an offense about which the witness is compelled to

9. *United States v. Thomas*, 612 F.3d 1107, 1127–28 (9th Cir.2010); *United States v. Black*, 776 F.2d 1321, 1327 (6th Cir.1985).

10. *See Bonjour v. Bonjour*, 592 P.2d 1233, 1237 (Alaska 1979); *Larson v. State*, 564 P.2d 365, 372 (Alaska 1977).

11. 1982 House Journal, Supp. No. 64 (June 2nd), p. 16.

12. *See In Re Grand Jury Proceedings*, 644 F.2d 348, 350 (5th Cir.1981); *United States v. Berardelli*, 565 F.2d 24, 28 (2nd Cir.1977); *see also United States v. Alter*, 482 F.2d 1016, 1028 (9th Cir.1973).

13. *See SLA 2004, ch. 124, §§ 20–22.

testify, except in a prosecution based on perjury, giving a false statement or otherwise knowingly providing false information, or hindering prosecution.

The legislature amended the statute to make it conform to the decision of the Alaska Supreme Court in *State v. Gonzalez* (*Gonzalez II*), 853 P.2d 526 (Alaska 1993). However, as we are about to explain, the switch to transactional immunity was not intended to alter or relax the rule that prohibited any and all derivative use of a witness's immunized testimony.

The *Gonzalez* litigation arose shortly after the legislature enacted the original version of the immunity statute in 1982. The parties challenging the statute argued that the statute did not provide protection that was co-extensive with the Alaska Constitution's privilege against self-incrimination—that witnesses were not fully protected against self-incrimination by the statute's prohibition on the use and derivative use of their immunized testimony. Instead, the challengers argued, witnesses would be fully protected only if they received "transactional" immunity—which is traditionally defined as "absolute immunity against future prosecution for the offense[s] to which the [witness's compelled testimony] relates".[14]

In *State v. Gonzalez* (*Gonzalez I*), 825 P.2d 920, 936 (Alaska App.1992), this Court held that a witness's immunity from the use and derivative use of their compelled testimony was not sufficient to fully protect them from the danger of self-incrimination—and that, for this reason, when a witness validly invoked the Alaska Constitution's privilege against self-incrimination, the witness had to be given transactional immunity before they could be compelled to testify.

This Court's conclusion was affirmed by the Alaska Supreme Court the following year in *Gonzalez II*, 853 P.2d 526. For present purposes, the significant aspect of *Gonzalez II* is the supreme court's explanation of *why* it decided that transactional immunity was required by the Alaska Constitution.

The supreme court declared that it was adopting the requirement of transactional immunity because, even though use and derivative use immunity was theoretically sufficient to protect the constitutional rights of immunized witnesses, the requirement of derivative use immunity could not be meaningfully enforced:

> We do not doubt that, in theory, strict application of use and derivative use immunity would remove the [witness's] hazard of [self-]incrimination. In a perfect world, one could theoretically trace every piece of [the government's] evidence to its source and accurately police the derivative use of [a witness's] compelled testimony. In our imperfect world, however, ... we doubt that workaday measures can, *in practice*, protect [a witness] adequately against use and derivative use [of their compelled testimony], [and] we [therefore] hold that [forcing a witness to testify after receiving only use and derivative use immunity] impermissibly dilutes the protection of article I, section 9 [of the Alaska Constitution].

*Gonzalez II*, 853 P.2d at 530 (emphasis in the original) (citation omitted).

In other words, the requirement of transactional immunity is essentially a supplement to the rule of use and derivative use immunity—an added protection to make sure that witnesses truly are protected from the derivative use of their immunized testimony. And because of this, even though AS 12.50.101 has been amended to require transactional immunity, the legislative commentary to the original version of AS 12.50.101 continues to provide persuasive insight into how to interpret the scope of the immunity conferred by the statute—particularly, the scope of a witness's protection against the use and derivative use of their immunized testimony.

Accordingly, we hold that the final clause of AS 12.50.101(a)—the exception for charges of perjury, false statement, and hindering prosecution—does not authorize the State to use Dupri Corbett's yet-to-be-given immunized testimony as evidence to support a prosecution for past acts of perjury, false statement, or hindering prosecution.

**14.** *Counselman v. Hitchcock,* 142 U.S. 547, 585– 86, 12 S.Ct. 195, 206, 35 L.Ed. 1110 (1892).

*Conclusion*

For the reasons explained in this opinion, the State's petition for review is GRANTED, and the challenged ruling of the superior court—the decision that Dupri Corbett can validly invoke the privilege against self-incrimination and refuse to testify at his father's trial—is REVERSED.