NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections @ appellate.courts.state.ak.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br><br>                    Petitioner,<br><br>          v.<br><br>DEMETRIUS J. FINLEY,<br><br>                    Respondent,<br>          and<br><br>THOMAS B. DICKSON,<br><br>          Real Party in Interest. | Court of Appeals No. A-11552<br>Trial Court No. 3AN-10-3656 CR<br><br><br>O P I N I O N<br><br><br>No. 2433 — November 14, 2014 |

Petition for Review from the Superior Court, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Petitioner. Kevin G. Brady, Law Office of KeriAnn Brady, Anchorage, for the Respondent. Evan Chyun, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for the Real Party in Interest.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

The State of Alaska is prosecuting Demetrius J. Finley for a drug offense, and the State wishes to call Thomas B. Dickson as a witness at Finley's trial. The State concedes that Dickson's testimony would be self-incriminatory, so the State has granted "transactional" immunity to Dickson — promising him that he will not be prosecuted by the State of Alaska for any crime he is compelled to testify about. The Alaska Constitution requires this complete immunity when a witness is compelled to give self-incriminating testimony. *State v. Gonzalez*, 853 P.2d 526 (Alaska 1993).

But Dickson's testimony would also be self-incriminatory under the federal drug laws — and that is the source of the legal controversy in this case.

Under the Fifth and Fourteenth Amendments to the federal constitution, whenever one state grants immunity to a witness and compels the witness to give self-incriminating testimony, all other American jurisdictions (state and federal) are forbidden from using the witness's testimony against them. The witness is protected from either direct or "derivative" use of their testimony (such as using the testimony to develop new evidence or new investigative leads). *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 79; 84 S.Ct. 1594, 1609; 12 L.Ed.2d 678 (1964).

But this "use" immunity does not *completely* prevent these other jurisdictions from prosecuting the witness for the crimes revealed by their testimony. Other states and the federal government remain empowered to prosecute the witness, so long as their evidence is derived wholly independently of the witness's compelled testimony.

The witness in this case, Dickson, argues that the transactional immunity required by the Alaska Constitution (as construed in *State v. Gonzalez*) covers not only criminal prosecutions initiated by the State of Alaska and its political subdivisions, but also criminal prosecutions initiated by any other American jurisdiction. Thus, Dickson contends, he can refuse to testify at Finley's trial as long as he faces any possibility of

prosecution by the federal government (or by any other state) for the drug offense that he will be compelled to testify about.

According to Dickson, the State can not compel him to testify unless the State guarantees that he will receive *transactional* immunity — not just the use immunity guaranteed by *Murphy v. Waterfront Commission* — from every other American jurisdiction where he might face criminal liability because of his testimony.

The superior court agreed with Dickson and ruled that he could not be compelled to testify unless the State obtained a guarantee of transactional immunity for Dickson from the federal government.

For the reasons explained in this opinion, we hold (as a matter of Alaska constitutional law) that the result reached by the United States Supreme Court in *Murphy v. Waterfront Commission* is the correct resolution of this problem of inter-jurisdictional immunity. Dickson is entitled to transactional immunity from prosecution by the State of Alaska, but he is only entitled to use immunity from prosecution by other American jurisdictions.

We therefore reverse the ruling of the superior court: Dickson can be compelled to testify because of the State of Alaska's grant of immunity.

*The procedural history of this litigation*

Demetrius Finley stands accused of second-degree controlled substance misconduct — more specifically, delivery of heroin. Thomas Dickson was involved in the heroin transaction with Finley, and Dickson ultimately pleaded guilty to fourth-degree controlled substance misconduct (possession of heroin). As part of his plea bargain, Dickson agreed to testify against Finley.

Later, however, Dickson announced that he would not testify against Finley — that, instead, he intended to assert his privilege against self-incrimination.

The State declared that it was willing to grant transactional immunity to Dickson — that is, complete immunity from prosecution by the State of Alaska for any crimes he was compelled to testify about. And, as we have already explained, if Dickson is compelled to testify under the State of Alaska's grant of immunity, he is automatically entitled to immunity from any use of his testimony (either direct use or derivative use) in any federal court or in the courts of any other state.

But Dickson argued that this use immunity was not a sufficient protection against his potential federal prosecution for drug offenses. He asserted that his rights under the Alaska Constitution would not be satisfied unless he received transactional immunity from the federal government.

The superior court agreed with Dickson. The court noted that the use immunity guaranteed by *Murphy v. Waterfront Commission* did not amount to a *complete* immunity from federal prosecution for his drug offense. And the court ruled that, as long as Dickson faced potential prosecution by any other jurisdiction for the crimes revealed by his testimony, it would violate the Alaska Constitution to compel him to testify. Thus, the court declared, Dickson could continue to assert his privilege against self-incrimination (and could properly refuse to testify at Finley's trial) unless the federal government granted Dickson transactional immunity for the crimes he testified about.

The State petitioned this Court to review the superior court's ruling. This Court granted the State's petition, ordered formal briefing, and stayed the criminal proceedings against Finley.

(Because Finley and Dickson have joined in a single brief, we do not need to resolve the question of whether Finley has standing to participate in this litigation,

given that the litigation is concerned solely with the scope of Dickson's privilege against self-incrimination.) [1]

*The two types of witness immunity recognized under American law*

Both the Fifth Amendment to the United States Constitution and Article I, Section 9 of the Alaska Constitution guarantee a right against self-incrimination. Likewise, under both federal law and Alaska law, a witness whose testimony would be self-incriminating can nevertheless be forced to testify if the government grants the witness immunity. [2]

But federal and state law differ as to the *type* of immunity that is required before a witness can be forced to give self-incriminating testimony.

Under federal law and the law of about half the states, [3] the government must grant "use" immunity to the witness — *i.e.*, protection against (1) direct use of the witness's testimony and (2) any derivative use of the testimony (*e.g.*, use of any evidence or investigative leads developed as a result of the testimony). *See Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

On the other hand, under Alaska law [4] and the law of the other half of the states, the government must grant "transactional" immunity to the witness — *i.e.*,

---

[1]   *See State v. Corbett*, 286 P.3d 772, 775 (Alaska App. 2012).

[2]   *See* 18 U.S.C. § 6002 and AS 12.50.101.

[3]   Wayne R. LaFave, Jerold H. Israel, Nancy J. King, and Orin S. Kerr, *Criminal Procedure* (3rd ed. 2007), § 8.11(b), Vol. 3, p. 274.  See also the synopsis of the case law contained in *Commonwealth v. Swinehart*, 664 A.2d 957, 965-67 (Pa. 1995).

[4]   *State v. Gonzalez*, 853 P.2d 526, 533 (Alaska 1993).

complete immunity from prosecution (no matter where the government's evidence comes from) for any criminal offense that the witness is compelled to testify about.

As this Court explained in *State v. Corbett*, 286 P.3d 772, 779 (Alaska App. 2012), the requirement of transactional immunity is essentially a supplement to the rule of use immunity — "an added protection to make sure that witnesses truly are protected from the derivative use of their immunized testimony."

*The legal problem presented in this case:  cross-jurisdictional immunity*

If a person's conduct subjects them to criminal liability in only one jurisdiction — *i.e.*, liability only under federal law, or only under the law of a single state — then the law of that jurisdiction will prescribe the type of immunity that the person must receive before they can be forced to relinquish their privilege against self-incrimination.  But the situation is more complicated if a person's conduct potentially subjects them to criminal liability in more than one jurisdiction.

The United States Supreme Court initially took the position that American jurisdictions (both state and federal) were not bound by the immunity granted to a witness by the authorities of another jurisdiction.  Thus, any other jurisdiction was free to use the witness's compelled testimony as a basis for a criminal prosecution.

This principle was first enunciated in 1931 in *United States v. Murdock*,[5] where the Supreme Court held that a person who was called to testify in federal court could not claim the privilege against self-incrimination based solely on the danger that their testimony might subject them to criminal liability under state law.

The Supreme Court noted that, in earlier decisions, it had ruled that (1) a person who was granted immunity by federal prosecutors could properly be compelled

_____

[5]    284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210 (1931).

to testify even though this grant of immunity did not protect the person against state prosecution; and likewise (2) a person who was granted immunity by state prosecutors could properly be compelled to testify even though these state officials had no power to give the witness protection against federal prosecution. *Id.*, 284 U.S. at 149, 52 S.Ct. at 65.

The rule established by these decisions, the Supreme Court declared, was that the privilege against self-incrimination was fully satisfied if the person was granted complete immunity from prosecution under the laws of "the government [that was] compelling the witness to answer". *Ibid*.

Thirteen years later, in *Feldman v. United States*, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408 (1944), the Supreme Court held that when a person was compelled to give testimony in state court under a state grant of immunity, that person's testimony could be used by federal authorities to prosecute the person for a violation of federal law.[6]

(See also *Knapp v. Schweitzer*, 357 U.S. 371, 374-75; 78 S.Ct. 1302, 1304-05; 2 L.Ed.2d 1393 (1958), which held that state authorities could compel a person to testify by granting the person immunity from state prosecution, even though the person's testimony would be incriminating under federal law.)

The approach to witness immunity and self-incrimination expounded in *Murdock* and *Feldman* — *i.e.*, the principle that no jurisdiction is bound by the immunity granted to a witness by another jurisdiction — was the controlling law in Alaska when Alaska was a federal territory. More significantly, it was the law in Alaska in 1955-56, when the Alaska Constitution was drafted.[7]

---

[6]    322 U.S. at 493, 64 S.Ct. at 1084-85.

[7]    http://en.wikipedia.org/wiki/Constitution_of_Alaska.

But in 1964, in *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), the United States Supreme Court altered course and declared that the federal government and the several states *were* bound to recognize the immunity granted to a witness by authorities in another jurisdiction.

The petitioners in *Murphy* were called to give testimony about a work stoppage at New York Harbor. [8] They were given immunity for their testimony under the laws of New York and New Jersey, but they still refused to answer questions, on the ground that their answers would subject them to federal criminal liability. [9] Because the petitioners' legal argument had already been rejected in *Murdock* and *Feldman*, the petitioners were held in contempt — and their case ultimately made its way to the Supreme Court. [10]

The Supreme Court was re-thinking its decisions in *Murdock* and *Feldman* because the Court was getting ready to rule (in *Malloy v. Hogan* [11]) that the Fifth Amendment privilege against self-incrimination was binding on the states (under the due process clause of the Fourteenth Amendment). Because of its impending decision broadening the reach of the Fifth Amendment, the Supreme Court granted review in *Murphy v. Waterfront Commission* to re-examine the question of "whether, absent an immunity provision, one jurisdiction in our federal structure may compel a witness to give testimony which might incriminate him under the laws of another [American] jurisdiction." [12]

---

[8]  *Murphy*, 378 U.S. at 53, 84 S.Ct. at 1596.

[9]  *Id.*, 378 U.S. at 53-54, 84 S.Ct. at 1596.

[10]  *Id.*, 378 U.S. at 54, 84 S.Ct. at 1596.

[11]  378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

[12]  *Murphy*, 378 U.S. at 54, 84 S.Ct. at 1596.

In *Murphy*, the Supreme Court concluded that the Fifth and Fourteenth Amendments required cross-jurisdictional recognition of any grant of immunity made by the federal government or by any state government. [13] [14]

But this holding raised yet another question:  what *kind* of cross-jurisdictional recognition did the federal constitution require?

*Murphy* was decided in 1964.  At that time (that is, eight years before the Supreme Court adopted a rule of use immunity in *Kastigar v. United States* [15]), the accepted view was that a person could not be compelled to give up their privilege against self-incrimination unless they received transactional immunity — full immunity from prosecution for any crime that they were compelled to testify about.  (Indeed, the petitioners in *Murphy* had been granted transactional immunity by the States of New York and New Jersey before they were ordered to testify.) [16]

---

[13]  *Id.*, 378 U.S. at 77-78, 84 S.Ct. at 1609.

[14]  The *Murphy* Court also declared that *Murdock* and *Feldman* had been wrongly decided — that those decisions were "unsupported by history or policy". *Murphy*, 378 U.S. at 77, 84 S.Ct. at 1609.  But more recently, in *United States v. Balsys*, 524 U.S. 666, 683-88; 118 S.Ct. 2218, 2228-2230; 141 L.Ed.2d 575 (1998), the Supreme Court repudiated this portion of the *Murphy* decision.  The Court re-affirmed the principle that the Fifth Amendment does *not* protect witnesses from potential criminal liability in jurisdictions outside the United States (*i.e.*, other countries), and the Court declared that the correct reading of *Murphy* was that, for purposes of the Fifth and Fourteenth Amendments, all American jurisdictions were to be viewed as one regarding the issue of immunity.

[15]  406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

[16]  *Murphy*, 378 U.S. at 53, 84 S.Ct. at 1596.  (This fact is recited more clearly in *Kastigar v. United States*, 406 U.S. 441, 457; 92 S.Ct. 1653, 1663; 32 L.Ed.2d 212 (1972).)

But the *Murphy* Court did not require the state and federal governments to extend transactional immunity to witnesses who were compelled to testify under a grant of immunity in another jurisdiction. Instead, the Supreme Court declared that the federal constitution required these other jurisdictions to extend *use immunity* to these witnesses:

> [W]e [declare] the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by federal officials [to support] a criminal prosecution against him. ... [T]he Federal Government must be prohibited from making any such use of compelled testimony and its fruits.

*Murphy*, 378 U.S. at 79, 84 S.Ct. at 1609.

The Court declared that it was adopting this rule of use immunity as a means of achieving two ends: "to implement [the] constitutional [privilege] and [to] accommodate the interests of the State and Federal governments in investigating and prosecuting crime". [17] The Court explained that this "exclusionary rule" — *i.e.*, the rule of use immunity — "leaves the [state] witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity", while at the same time "permitting the States to secure [testimony] necessary for effective law enforcement". [18]

---

[17]   *Ibid.*

[18]   378 U.S. at 79, 84 S.Ct. at 1609-1610.

*Why we reverse the superior court's ruling in this case*

The issue in this case is whether Article I, Section 9 of the Alaska Constitution requires a different answer to the inter-jurisdictional immunity question that the Supreme Court addressed in *Murphy*.

Our state constitution was drafted in the mid-1950s, when Alaska was still a federal territory. At that time, the rule under federal law — as illustrated by the Supreme Court's decisions in *Murdock* and *Feldman* — was that (1) the federal government and the several states were not required to honor grants of immunity made by another American jurisdiction, and (2) a person who was granted immunity by one jurisdiction could not refuse to testify based on the possibility that their testimony might incriminate them in a different jurisdiction.

We have found nothing in the record of the Alaska constitutional convention to suggest that the delegates wished to depart from this rule when they drafted the self-incrimination provision of Article I, Section 9. [19] We therefore conclude that Article I, Section 9 — at least as it was originally understood — did not apply to potential criminal prosecutions under the laws of other jurisdictions.

However, this conclusion does not necessarily resolve this case.

In *State v. Gonzalez*, when our supreme court was asked to decide whether a grant of use immunity was sufficient to supplant the protection of Article I, Section 9, the court declared that the answer to this question "[was] not controlled by any one source of authority, such as United States Supreme Court precedent[,] or an appeal to the intent of the framers of the Alaska Constitution." 853 P.2d at 529. The supreme court

---

[19] See the discussion of the self-incrimination clause that occurred on Day 44 of the convention, as well as the commentary to the self-incrimination clause contained in Appendix V to the convention minutes.

acknowledged that an appellate court should consider those sources "when appropriate", but the court declared that its real task was to "[discern] the intention and spirit" of the constitutional provision to determine what sort of protection was "necessary for the kind of civilized life and ordered liberty which is at the core of our constitutional heritage." *Ibid.*

We therefore believe that we must look beyond the drafters' original understanding of Article I, Section 9 to see if evolving standards of "ordered liberty" require a different reading of the self-incrimination clause.

We begin by looking at how other "transactional immunity" states have answered this question — *i.e.*, other states whose law requires a grant of transactional immunity to supplant a witness's assertion of the privilege against self-incrimination.

Massachusetts, Oregon, and Mississippi are transactional immunity states, and the supreme courts of those states have either held or indicated that when a witness faces potential criminal liability in another jurisdiction, the use immunity guaranteed by the Fourteenth Amendment (as construed in *Murphy*) is sufficient.

The Massachusetts Supreme Court directly addressed this issue in *Baglioni v. Chief of Police of Salem*, 656 N.E.2d 1223, 1226 (Mass. 1995), and again in *In re Vaccari*, 955 N.E.2d 266, 269-270 (Mass. 2011). The Massachusetts court held that a witness called to testify in Massachusetts has no right to insist on transactional immunity from federal prosecution, even though the witness can demand transactional immunity from prosecution by Massachusetts authorities.

*See also State v. Soriano*, 684 P.2d 1220, 1234 (Or. App. 1984) (*en banc*), and *Wright v. McAdory*, 536 So.2d 897, 904 (Miss. 1988).

Dickson and Finley have not directed our attention to any cases reaching a contrary result. The fact that, even among transactional immunity jurisdictions, no American court has adopted the rule proposed by Dickson and Finley suggests that their

expansive view of the privilege against self-incrimination is not an essential component of the "ordered liberty ... at the core of our constitutional heritage". *Gonzalez*, 853 P.2d at 529.

We further believe that the rule proposed by Dickson and Finley is inconsistent with our state's sovereignty within a federal system.

If we endorsed the interpretation of Article I, Section 9 that Dickson and Finley propose (and that the superior court adopted) — the rule that no witness can be compelled to testify absent a guarantee of transactional immunity from every sovereign whose laws the witness might have violated — then the Alaska government's power to grant immunity would often hinge on the discretionary decision of another sovereign — or, conceivably, the discretionary decisions of several other sovereigns.

We live in an age where interstate travel (indeed, international travel) is a regular occurrence for many, and where the Internet affords people the ability to communicate instantly across state and national boundaries. Because of this, personal and business activities often span the borders of several states, and those activities potentially involve both state law and federal law.

Thus, there will be many occasions when a criminal activity or enterprise affects not just the interests of the people of Alaska, but also the interests of one or more other sovereigns within our federal system. Under the rule that Finley and Dickson propose, no grant of immunity made by Alaska officials would be constitutionally sufficient unless every other interested sovereign also voluntarily extended transactional immunity to the witness. As a consequence, our own state's interest in compelling the testimony needed to investigate and prosecute these criminal activities would be held hostage to the competing interests of other sovereigns.

For these reasons, even though we have the authority to construe Article I, Section 9 of our constitution more broadly than the other transactional immunity states

have construed their own law, we conclude that those states struck the proper balance when they endorsed the approach taken by the United States Supreme Court in *Murphy v. Waterfront Commission*.

A witness who is granted immunity, and who is compelled to testify despite a claim of self-incrimination, is entitled to protection from prosecution in other jurisdictions — but not an absolute protection that is beyond the power of Alaska authorities to grant. As the Supreme Court explained in *Murphy*, the law must implement the constitutional privilege against self-incrimination while at the same time "accommodat[ing] the interests of the State and Federal governments in investigating and prosecuting crime". *Murphy*, 378 U.S. at 79, 84 S.Ct. at 1609. We conclude that the correct way to balance these interests is the law as it currently stands: under the Alaska Constitution, the witness receives transactional immunity from prosecution for any violation of Alaska's criminal law, while under the Fifth and Fourteenth Amendments, the witness is guaranteed use immunity for their testimony in every other American jurisdiction.


*Conclusion*


We hold that Dickson can be compelled to testify under the State of Alaska's grant of transactional immunity, even though Dickson will receive only use immunity from the federal government and from other states whose laws Dickson has potentially violated.

The decision of the superior court is REVERSED.